Thomas J. Stolp, Esq., Bar No. 114211
**ROGERS, MacLEITH & STOLP, LLP**
10061 Talbert Avenue, Suite 390
Fountain Valley, CA 92708
(714) 847-6041

Attorney for Universal Card, Inc.
dba Merchant Services of Irvine

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| In re:<br><br>JOHN EUGENE FOX,<br><br>Debtor.<br>_____<br>Universal Card, Inc., a California corporation, dba Merchant Services of Irvine,<br><br>Plaintiff,<br><br>vs.<br><br>John Eugene Fox, an individual,<br><br>Defendant.<br>_____ | Case No. 16-40340 WJL 7<br><br>Chapter 7<br><br>Adversary Case No.<br><br>COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT<br><br>11 U.S.C. §§523(a)(2) and 523(a)(6) |

Plaintiff Universal Card, Inc., dba Merchant Services of Irvine, alleges:

1. This is an adversary proceeding to determine dischargeability of a debt.

2. This adversary proceeding is brought in connection with Defendant's Case No. 16-40340 WJL 7, entitled In re John Eugene Fox, under chapter 7 of Title 11 of the United States Code now pending in this court. This court has jurisdiction over this proceeding under

Title 11 of the Untied States Code, Section 523(c) and Title 28 of the United States Code, Sections 157(b) and 1334. This adversary proceeding is a "core proceeding" as provided in Title 11 of the United States Code, Section 157(b)(2)(I).

3. Defendant, John Eugene Fox, is an individual and seeks to be discharged herein under Title 11 of the United States Code, Section 727.

4. On or about February 8, 2016, Defendant filed his voluntary Chapter 7 bankruptcy petition herein and Marlene G. Weinstein was appointed as Chapter 7 Trustee.

## FIRST CLAIM FOR RELIEF
## 11 U.S.C. §523(a)(2)

5. Plaintiff is informed and believes, and based thereon, alleges Fox Ortega Enterprises, hereinafter referred to as "Fox Ortega", were and are at all times herein mentioned corporations formed by Defendant John Eugene Fox, and duly organized and existing under and by virtue of the laws of the State of California, or authorized to do business and doing business in the County of Alameda, State of California.

6. Plaintiff is informed and believes, and based thereon, alleges Fox Ortega Enterprises was a California corporation doing business under the fictitious name of Premier Cru in the County of Alameda, State of California.

7. Defendant John Eugene Fox is, and all times mentioned herein was, a resident of the county of Contra Costa, state of California.

8. On or about May 7, 2014, a written Merchant Processing Application and Agreement (hereafter the "Agreement") was entered into between Plaintiff and Fox Ortega Enterprises and Premier Cru. The

essential terms of said Agreement were that Plaintiff would provide credit card processing services for Fox Ortega and Premier Cru and Fox Ortega and Premier Cru would pay for same. A true and correct copy of the Agreement (sans Program Guide) is attached hereto as Exhibit "A" and, by this reference, incorporated herein as though set forth in full. Some identifying information has been redacted to protect privacy.

9. On or about May 7, 2014, Defendant John Eugene Fox entered into a written personal guaranty as to the debts of Fox Ortega Enterprises and Fox Ortega Enterprises doing business as Premier Cru to Plaintiff. A true and correct copy of said guaranty is attached hereto as Exhibit "A".

10. Plaintiff performed all conditions, covenants and promises under the Agreement which it was obligated to perform save and except those which it was excused and/or prevented from performing.

11. Plaintiff is informed and believes that since 2001, Defendant, and representatives of Defendant, Fox Ortega and Premier Cru, have accepted orders and been paid for orders of wine from various customers of Defendant, Fox Ortega Enterprises and Premier Cru through credit card charges on the customers' credit cards. Defendant accepted payments for the orders of wine, and agreed to deliver the wine ordered by the customers. Defendant repeatedly promised to either deliver the wines specified in the Sales Orders to Defendant's customers, or later to return the payments made by the customers. Defendant was required to keep an appropriate amount of funds in bank accounts to support ACH withdrawals for credit card chargebacks.

12. Defendant has been engaged in a fraudulent scheme to improperly retain funds advanced by customers of Defendant, Fox Ortega

Enterprises and Premier Cru through credit card charges. Since 2013 Defendant and representatives of Defendant, Fox Ortega and Premier Cru falsely informed customers that Defendant would deliver the wines that customers had already paid for notwithstanding the fact Defendant knew that those deliveries would not be made. Defendant and representatives of Defendant, Fox Ortega Enterprises and Premier Cru made false excuses to delay repayment of the funds that customers had advanced. In conjunction therewith, Defendant falsely promised to Plaintiff herein to make payment on the chargebacks created by Defendant's customers cancelling the credit card charges which funds Defendant had retained.

13. Defendant failed to keep sufficient funds in bank accounts. Defendant would receive deposits from customer credit cards into Defendant's bank accounts, and then quickly remove those funds. Consequently funds would go into Defendant's bank accounts for sales, but then would not be present for withdrawal to cover chargebacks. Additionally, Plaintiff is informed and believes that as part of the scheme to retain funds received from customers through credit card charges and checks written to Defendant, Fox Ortega and Premier Cru, Defendant would send payment to customers knowing that there would be insufficient funds in the business accounts to satisfy those checks to deceive customers and Plaintiff that obligations were being satisfied. By appearing to satisfy the financial obligations, Defendant knowingly made false representations that Plaintiff and Defendant's customers would be paid. Defendant's conduct is part of a continuing fraudulent scheme to defraud Plaintiff and customers of Defendant, Fox Ortega Enterprises and Premier Cru.

14. At the time Defendant made the promises and statements to

4
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
TJS:C:\LawOffice\GHC Recovery Services\PremierCru\Fox Bankruptcy\Complaint.wpd

Case: 16-04145    Doc# 1    Filed: 05/12/16    Entered: 05/12/16 16:24:18    Page 4 of 13

Plaintiff and to Defendant's customers as alleged above, Defendant had no intention of performing the required obligations.

15. The promises and statements were made by Defendant with the intent to induce Plaintiff not to take any formal legal action against Defendant, and to continue accepting and processing credit card charges from customers of Defendant, Fox Ortega Enterprises and Premier Cru.

16. Plaintiff was, at the time Defendant's false promises and statements were made, ignorant of Defendant's secret intention not to perform, and Plaintiff reasonably and justifiably relied on Defendant's promises and statements. In the exercise of reasonable diligence, Plaintiff could not have discovered Defendant's secret intention not to perform. In reliance on Defendant's false statements and promises, Plaintiff refrained from taking formal legal action against Defendant, and continued to accept and process credit card charges from customers of Defendant, Fox Ortega Enterprises and Premier Cru.

17. Defendant failed to abide by his promises, and failed to either deliver the wines specified in the Sales Orders, refund payments to customers of Defendant, Fox Ortega Enterprises, and Premier Crus and failed to repay credit card chargebacks to Plaintiff.

18. As a proximate result of Defendants' fraudulent conduct, Plaintiff has been damaged in the amount of at least $3,781,872.20, plus interest.

19. It should be further noted and is herewith pled for, that inherent in the nature of the transactions between the parties is the fact that "chargebacks" are an ongoing factor and a particular transaction may be objected to by the cardholder many months after

such a transaction takes place and such objection may lead to an eventual "chargeback" which in turn will become an additional amount in Plaintiff's claim herein against Defendants. As this litigation progresses it is inherently possible that additional "chargebacks" may be "in the pipeline" and may mature after the initiation of this case or the service of this Complaint. Such additional "chargebacks" (including fees associated therewith and interest accruing thereon) as may later be determined subsequent to the initiation of this case are also sought in this case and claim is made therefor. Such will be demonstrated by the factual affidavit or testimony of Plaintiff or its agents hereafter and Defendant is herewith notified of the open-ended nature of this matter and that additional sums over and above that which is presently specified herein may become additional portions of Plaintiff's claim hereafter and will be included in the amounts sought at the time of trial.

20. The aforementioned conduct of Defendants was an intentional misrepresentation made with the intention on the part of Defendant of damaging Plaintiff. Defendants made false promises and statements, and otherwise engaged in despicable conduct in conscious disregard of Plaintiffs rights, justifying an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
(11 U.S.C. §523(A)(6))

21. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of plaintiff's previous claim for relief, and each an every part thereof with the same force and effect as though set out at length herein.

22. The fraudulent action of Defendant caus a willful and malicious injury to Plaintiff and its business. Defendant

6
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
TJS:C:\LawOffice\GHC Recovery Services\PremierCru\Fox Bankruptcy\Complaint.wpd
Case: 16-04145   Doc# 1   Filed: 05/12/16   Entered: 05/12/16 16:24:18   Page 6 of 13

intentionally made the representations concerning credit charges, deliver of wine, credit card chargebacks and maintaining sufficient funds to pay credit card chargebacks to induce Plaintiff to continue process credit card charges of customers of Defendant, Fox Ortega and Premier Cru, with the intent to receive substantial sums from Plaintiff without performing any of the obligations required under the Agreement, and only to cause substantial damage to Plaintiff and its business.

23. In doing the acts herein alleged, Defendant acted with malice, oppression, and fraud. Plaintiff is therefore entitled to exemplary and punitive damages in an amount according to proof at time of trial.

24. The debt of Defendant to Plaintiff for this wilful and malicious injury is nondischargeable under Section 523(a)(6) of Title 11 of the United States Code.

WHEREFORE, Plaintiff prays for judgment against Defendant for each claim of relief alleged herein above, as follows:

FIRST CLAIM FOR RELIEF:

1. That this court make a determination that the indebtedness of Defendant to Plaintiff is nondischargeable;

2. For general damages in the sum of $3,781,872.20, or more according to proof at time of trial;

3. That this court determine the remaining issues and render a judgment for Plaintiff for the amount of their debt;

4. For interest, attorney's fees and court costs;

5. For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in simialr conduct; and,

6. For such other and further relief as this Court deems just

7
COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
TJS:C:\LawOffice\GHC Recovery Services\PremierCru\Fox Bankruptcy\Complaint.wpd
Case: 16-04145    Doc# 1    Filed: 05/12/16    Entered: 05/12/16 16:24:18    Page 7 of 13

and proper;

SECOND CLAIM FOR RELIEF

7. That this court make a determination that the indebtedness of Defendant to Plaintiff is nondischargeable;

8. For general damages in the sum of $3,781,872.20, or more according to proof at time of trial;

9. That this court determine the remaining issues and render a judgment for Plaintiff for the amount of their debt;

10. For interest, attorney's fees and court costs;

11. For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in similar conduct; and,

12. For such other and further relief as this Court deems just and proper.

Date: 5/11/2016

ROGERS, MacLEITH & STOLP, LLP

By: _____
THOMAS J. STOLP, ESQ.
Attorney for Plaintiff
Universal Card, Inc., a California corporation, dba Merchant Services of Irvine

# EXHIBIT "A"

# MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 1 of 4)

Office: **Norcal**   Consultant's Name: **Nancy McFarland**   ID#: **5025**
Merchant Number: _____   Chain #: _____   Headquarters #: _____

MerServ1604(ia)

## 1. BUSINESS INFORMATION

Client's Business Name (Doing Business As): **Premier Cru - Internet Acct**
Client's Corporate/Legal Name (Use Also For Headquarter's Information): **Fox Ortega Enterprises**

Business Address: (No P.O. Box) **1011 University Ave**
Billing Address: (If Different Than Location Address)

City: **Berkeley**   State: **Ca.**   Zip: **94710**
City: ___  State: ___  Zip: ___

Location Phone #: **510-644-9463**   Location Fax #: **510 647-3833**   Contact Name: **John Fox**

Business Website Address: **w premiercru.net**   Contact Phone #: **925-283-4588**   Business Email Address: **John@premiercru.net**

Send Retrieval Requests to: ☐ DBA Location ☐ Corp/Legal Location
Send Merchant Monthly Statement to: ☐ DBA Location ☐ Corp/Legal Location

Name (as it appears on your income tax return): _____
FEDERAL TAX ID #: **94 3360341**
☐ I certify that I am a foreign entity/nonresident alien. (If checked, please attach IRS Form W-8.)

NOTE: Failure to provide accurate information may result in a withholding of merchant funding per IRS regulations. (See Part III, Section A.3 of your Program Guide for further information.)

☐ INDIVIDUAL/SOLE PROPRIETORSHIP: State in which Certificate of Assumed Name Filed: ___ State: ___
☐ TAX EXEMPT ORGANIZATION (501C) State: ___
☐ INTERNATIONAL ORGANIZATION Location Filed: ___
☐ GOVERNMENT (Federal, State, Local)
☐ LIMITED LIABILITY COMPANY State Filed: ___
☐ CORPORATION – CHAPTER S, C   State: **CA**
☐ ASSOCIATION/ESTATE/TRUST State Filed: ___
☐ PARTNERSHIP State Filed: ___
☐ MEDICAL OR LEGAL CORPORATION State: ___

SIC/MCC #: ___
Detailed Explanation of Type of Merchandise, Products or Services Sold: **Wine sales**

Profile Type: ☐ Retail ☐ Retail w/tipline ☐ Restaurant ☐ Restaurant w/tipline ☐ Lodging ☐ Internet ☒ Moto

## 2. ADDITIONAL CREDIT / SITE SURVEY INFORMATION — ALL MERCHANTS

Are you using a Vendor? ☐ Yes ☒ No   If yes, please supply a copy of Vendor's report.

1. Zone: ☒ Business District ☐ Industrial ☐ Residential
2. Location: ☐ Mall ☐ Office ☐ Home ☒ Shopping Area ☐ Mixed ☐ Apartment ☐ Isolated
3. How many employees: **20**
4. How many Registers/Terminals: **1**
5. Is proper license visible? ☒ Yes ☐ No, explain: ___
6. Where is the merchant name displayed at the site? ☐ Window ☐ Door ☒ Store Front
7. Merchant Occupies: ☒ Ground Floor ☐ Other: ___
8. # of Floors/Levels: ☒ 1 ☐ 2-4 ☐ 5-10 ☐ 11+
9. Remaining Floor(s) Occupied by: ☐ Residential ☒ Commercial ☐ Combination
10. Approximate Square Footage: ☐ 0-250 ☐ 251-500 ☐ 501-2,000 ☒ 2,001 plus
11. Are customers required to leave a deposit? ☒ No ☐ Yes If Yes, % of deposit required: ___%
12. Return Policy: ☐ Full Refund ☐ Exchange Only ☒ None
13. Do you have a refund policy for MC/Visa/Discover Network/American Exp. OnePoint Sales? ☒ Yes ☐ No  If yes, check one:
    ☐ Exchange ☐ Store Credit
    ☒ MC/Visa/Discover Network/American Express OnePoint Credit
    If MC/Visa/Discover Network/American Express OnePoint Credit, within how many days do you submit credit transactions? ☒ 0-3 ☐ 4-7 ☐ 8-14 ☐ Over 14
14. Advertising Method (Attach at least one):
    ☐ Catalog ☐ Brochure ☐ Direct Mail ☐ TV/Radio
    ☒ Internet ☐ Phone ☐ Newspaper/Journals ☐ Other
    Marketing Materials required for Mail Order, B to B, Internet over $1 Million in annual volume. Attach Web Page for Internet Merchant.
15. Your Previous Processor: **Bank of America**
16. Check Reason For Leaving: ☒ Rate ☐ Service ☐ Terminated ☐ Other: ___

### Mail / Telephone Order / Internet / Business to Business Information
(All Questions must be Answered)

1. What % of total gross sales represent business to business (vs business to consumer):
   Business to Business **30** % + Business to Consumer **70** % = 100% (total sales)
2. What % of payment card sales represent bus. to bus. (vs business to consumer):
   Business to Business **30** % + Business to Consumer **70** % = 100% (total sales)
3. What is the time frame from transaction to delivery? (% of orders delivered in):
   0-7 days **80** % + 8-14 days **20** % + 15-30 days ___% + over 30 days ___% = 100%
4. MC/Visa/Discover Network/American Express OnePoint sales are deposited (check one):
   ☒ Date of Sale ☐ Date of Shipment ☐ Date of Delivery ☐ Other (specify): ___
   If date of sale, indicate number of days until product is shipped: ___
5. List the name(s) and address(es) of vendors from which the product is purchased:
   Name: ___  Address: ___  City: ___  State: ___  Zip: ___  Phone: ___
6. Where is the product stored/shipped from? ___
7. List the name(s) and address(es) of third party, fulfillment organizations, or parties aside from your staff who will assist/participate with the sales, marketing, processing of orders, or shipping of merchandise.
   Name: **N/A**  Address: ___  City: ___  State: ___  Zip: ___  Phone: ___
8. In what geographic area(s) will the product be marketed and sold? **worldwide**
9. List carrier service(s) that will delivery the product: **UPS / Fed Ex**
10. How does the customer order the product? **online**
11. Does any of your cardholder billing involve automatic renewals or recurring transactions (i.e., cardholder authorizes initial sale only)? ☐ Yes ☒ No

Merchant Services, Inc. is a registered ISO/MSP of Wells Fargo Bank, N.A., Walnut Creek, CA.   Client Initials: _JF_   04/13

Case: 16-04145   Doc# 1   Filed: 05/12/16   Entered: 05/12/16 16:24:18   Page 10 of 13

DBA Name: Premier Cru   Merchant #: _____

## 3. COMPANY HISTORY (Page 2 of 4)

| Date Business Started: 1980 | Prior Bankruptcies? ☒ No ☐ Yes ☐ Business and / or ☐ Personal |
|---|---|
| **TRADE REFERENCE 1** | **TRADE REFERENCE 2** |
| Vendor Name: | Vendor Name: |
| Contact Telephone: | Contact Telephone: |

## 4. OWNERS / PARTNERS / OFFICERS

| OWNER / PARTNER / OFFICER 1 | | OWNER / PARTNER / OFFICER 2 | |
|---|---|---|---|
| Name: (First, MI, Last) John Fox | % Ownership: 50 | Name: (First, MI, Last) | % Ownership: |
| Title: President | | Title: | |
| Home Address: (No P.O. Box) 314 Las Quebradas | | Home Address: (No P.O. Box) | |
| City: Alamo  State: Ca  Zip: 94507  Telephone #: 925-163-4588 | | City:  State:  Zip:  Telephone #: | |
| Social Security # 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  D.O.B.: 7-11-50  DL #: R0869284  State: Ca | | Social Security #  D.O.B.:  DL #:  State: | |

## 5. SETTLEMENT INFORMATION

Deposit Bank: Community Bank of the Bay  ABA/Routing: (9 Digits) 121142407  Deposit Account #: 165014184

## 6. EQUIPMENT/THIRD PARTY INFORMATION

Do you use any third party to store, process or transmit cardholder data? ☐ Yes ☒ No

If yes, give name/address: _____

Please identify any Software used for storing, transmitting, or processing Card Transactions or Authorization Requests: _____

Multi-Merchant MID # _____   Multi-Location # ____ of ____

INTERNET GATEWAY: ☐ GlobalGateway.com  ☐ Authorize.Net  Set-up E-Mail: _____

| | | Quantity | Rent | Lease | Existing |
|---|---|---|---|---|---|
| PC/Internet Software & Version | PayPro Flow | 1 | ☐ | ☐ | ☒ |
| Terminal Model | Vx510CE | 3 | ☐ | ☒ | ☐ |
| Terminal Model | | | ☐ | ☐ | ☐ |
| PIN Pad | | | ☐ | ☐ | ☐ |
| Check Reader | | | ☐ | ☐ | ☐ |
| Other | | | ☐ | ☐ | ☐ |

MerServ1604(ia)

## 7. TRANSACTION INFORMATION

**FINANCIAL DATA** (Estimate if Never Processed)

| | | **WHERE IS SALE TRANSACTED?** (Must = 100%) | |
|---|---|---|---|
| Gross YEARLY Sales Volume (Cash + Credit + Debit + Check) | $ see financials | Face-to-Face Swiped | ____ % |
| Average YEARLY MC/Visa/Discover Network Volume | $ 500..1 Million | Face-to-Face Keyed | ____ % |
| Average YEARLY American Express OnePoint Volume | $ 600,000 | Internet | 100 % |
| Average MC/Visa/Discover Network Ticket | $ 500 | Mail Order | ____ % |
| Average American Express OnePoint Ticket (Estimate if Never Processed in Past) | $ 500 | Telephone Order | ____ % |
| Highest MC/Visa/Discover Network Ticket Amount | $ 25,000 | | |
| Seasonal? ☒ No ☐ Yes | | Total | 100 % |

Months Open: ☐ Jan ☐ Feb ☐ Mar ☐ Apr ☐ May ☐ Jun ☐ Jul ☐ Aug ☐ Sep ☐ Oct ☐ Nov ☐ Dec

MerServ1604(ia)

DBA Name: Premier Cell    Merchant #: _____

## B. SERVICE FEE SCHEDULE (Page 3 of 4)

### Accept all MasterCard, Visa & Discover Network Transactions
*(presumed, unless any selections below are checked)*
See Section 1.9 of the Program Guide for details regarding limited acceptance.

**Discover Network Acceptance**
- ☐ Opt Out
- ☐ Accept Discover Network Credit transactions *only*
- ☐ Accept Discover Network Non-PIN Debit trans. *only*

**MasterCard Acceptance**
- ☐ Accept MC Credit transactions *only*
- ☐ Accept MC Non-PIN Debit trans. *only*
- ☐ Accept PIN Debit transactions *only*

**Visa Acceptance**
- ☐ Accept Visa Credit transactions *only*
- ☐ Accept Visa Non-PIN Debit trans. *only*

Discount Collected   ☐ Daily   ☑ Monthly

### Authorization & Capture Transaction Fees

MasterCard, Visa, Discover Network & American Express Authorization, Capture, Return & Batch Transaction Fee: $ 0.30 (Per Item) [.10]

Voice Authorization $ 1.95 (Per Item)   Voice AVS Fee $ 2.95 (Per Item)
Electronic AVS Fee $ 0.10 (Per Item)   ARU Fee $ 1.95 (Per Item)

### Miscellaneous Fees / Monthly Fees

| Field | Value | Field | Value | Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|---|---|---|---|
| Gateway/Wireless/MOBILE Trans. Fee | $ 0.20 (Per Item) | Retrieval Fee (12B Letter) | $ 15.00 (Per Item) | Monthly Statement Fee | $ 10.00 (Acct on File) | Chargeback Fee | $ 45.00 (Per Item) | Wireless/Mobile ROAMDATA Fee (Per Terminal) | $ 20.00 |
| Early Termination Fee (See Part II, Section A.3) | $ 495.00 (One Time Fee) | Alt. ACH Acct Fee: (Monthly) | $ 5.00 | ACH Return: $ 45.00 | Annual Fee: $ 59.00 | Minimum Monthly Fee: $ 25.00 | | eMerchantView Access Fee | $ 8.50 |
| EBT Food Stamps $ 0.50 (Per Item) #: | | EBT Cash Benefits $ 0.50 (Per Item) #: | | | | STAR Network Annual Fee: $ 6.00 | | Merchant Club: $ 12.50 | |

Visa Network Partic. Fee (NPF) ☑ Yes ☐ No   Visa NPF Card Present Surcharge $ 0.00   Visa NPF Card Not Present Surcharge $ 0.00
Gateway Fee $ 10.00

Pass MC Acq Support Fee: ☑ Yes ☐ No   Pass MC Cross Border Fee: ☑ Yes ☐ No   Pass MC National Acq Brand Usage (NABU) Fee: ☑ Yes ☐ No   Pass MC Proc. Integrity Fee: ☑ Yes ☐ No   Pass Visa Trans. Integrity Fee: ☑ Yes ☐ No
Debit Access Fee $ 10.00

Pass Visa Risk ID: ☑ Yes ☐ No   Pass Visa Acq Proc. Fee: ☑ Yes ☐ No   Pass Visa Misuse of Auth Fee: ☑ Yes ☐ No   Pass Visa Zero Floor Limit Fee: ☑ Yes ☐ No   Pass Visa Int'l Acq Fee: ☑ Yes ☐ No   Pass Visa Acq ISA Fee: ☑ Yes ☐ No
TIN/TFN Invalid $ 7.95

Pass Discover Int'l Processing Fee? ☑ Yes ☐ No   Pass Discover Int'l Service Fee? ☑ Yes ☐ No   Pass Discover Data Usage Charge: ☑ Yes ☐ No   Annual Data Protection Program: $ 134.00

### Tiered / Fleet

**Discount Fees** (Based on Gross Sales Volume)

| RETAIL | | MOTO | |
|---|---|---|---|
| Tier | Discount Rate | Tier | Discount Rate |
| Visa/MC/Discover Network Qualified Credit | % | Visa/MC/Discover Network Qualified Credit | 3.10 % |
| Visa/MC/Discover Network Mid-Qualified Credit | 3.10 % | | |
| Visa/MC/Discover Network Non-Qualified Credit | 4.10 % | Visa/MC/Discover Network Non-Qualified Credit | 4.10 % |
| PIN DEBIT | | | |
| PIN Debit (Per Item) | $ 0.50 | | |

**Fleet**
Wright Express: $ 0.30 (per item)
Voyager: Qual 3.50 %   Other Item Rate $ 0.30 (per item)

**Third Party Charges**

| Miscellaneous Fees | | Equipment Lease Term | |
|---|---|---|---|
| Application Fee | $ | Basic Monthly Payment | $ 999.99 |
| Wireless/MOBILE Setup Fee | $ 50.00 (Per Terminal) | Lease Term (in months) | 48 |
| Reprogram Fee | $ | | |
| Payment Gateway Setup Fee | $ 100.- | | |

### Pass Through Interchange – Includes Dues and Assessments

Visa/MC/Discover Network Qualified Credit / Debit    .20 %

**PIN DEBIT Pass Through Interchange**

☑ Pass Through Debit Network Fees (ETC Only)   Per Item $ .10 (per item)   Volume Percent 20 %

MerServ1604(ia)                                                                                                  MerServ1604(ia)

### American Express Acceptance

☐ American Express OnePoint/Full Service (EDC)   or   ☐ American Express ESA*/Pass Through   and   ☑ Existing   American Express #: 5041706714

☑ Apply   ☐ Don't Apply

*American Express will charge either a Flat Fee of $ 7.95 or a Discount Rate and Transaction Fee directly to the merchant. Retail & Restaurant merchants will be charged an additional 0.30% for non-swiped American Express transactions. An inbound fee of .40% will be applied to any charge made using a card issued by an issuer located outside of the United States. These fees (as applicable) are determined and charged directly by American Express.

### American Express

| | Rate | Per Item | | Rate | Per Item |
|---|---|---|---|---|---|
| ☐ B2B | % | $ | ☐ Supermarkets | % | |
| ☐ Education | % | | ☐ Other Transportation | % | |
| ☐ Retail** | % | $ | ☐ Lodging | % | |
| ☐ Independent Gas Station | % | | ☐ Services, Wholesale and All Other | % | $ |
| ☐ Restaurant** | % | $ | ☐ Telecommunications | % | |
| ☐ Fast Food Restaurant | % | | ☐ B2B Special | % | |
| ☐ Healthcare – Office Based Doctors/Dentists | % | | ☐ Prepaid Card | % | $ |
| ☐ Mail Order & Internet | % | | ☐ Prepaid Card Supermarket | % | $ |

**0.30% downgrade will be charged for transactions whenever a CNP (Card Not Present) charge occurs. CNP means a charge for which the card is not presented at the point of purchase (e.g., charges by mail, telephone or internet), is used at unattended establishments (e.g., customer activated terminals), or for which the transaction is key entered.
An inbound fee of .40% will be applied to any charge made using a card issued by an issuer located outside of the United States.

DBA Name: Premier Cru                                      Merchant #: _____

## 9. SIGNATURES
(Page 4 of 4)

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the Program Guide (Version MerServ1604(ia)) and Confirmation Page, which is part of this Merchant Processing Application (consisting of Sections 1-10), and by this reference incorporated herein. Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or internet order. However, if your Application is approved based upon contrary information stated in Section 7, Transaction Information section above, you are authorized to accept transactions in accordance with the percentages indicated in that section. This signature page also serves as a signature page to the American Express Card Acceptance Agreement appearing in the Third Party Section of the Program Guide, if selected, the undersigned Client being "You" and "Your" for the purposes of the American Express Card Acceptance Agreement. Client authorizes Merchant Services, Inc. and Wells Fargo Bank, N.A. ("Bank") and their Affiliates to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies names in this Merchant Processing Application. Client authorizes Merchant Services, Inc. and BANK and their Affiliates (a) to procure information from any consumer reporting agency bearing his/her personal credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. Each of the undersigned authorizes us and our Affiliates to provide amongst each other the information contained in this Merchant Processing Application and Agreement and any information received from all references, including banks and consumer reporting agencies. It is our policy to obtain certain information in order to verify your identity while processing your account application.

By signing below, I represent that I have read and am authorized to sign and submit this application for the above entity which agrees to be bound by the American Express® Card Acceptance Agreement ("Agreement"), and that all information provided herein is true, complete and accurate. I authorize Merchant Services, Inc. and American Express Travel Related Services Company, Inc. ("AXP") and AXP's agents and Affiliates to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies, and disclose such information to their agent, subcontractors, Affiliates and other parties for any purpose permitted by law. I authorize and direct Merchant Services, Inc. and AXP and AXP agents and Affiliates to inform me directly, or inform the entity above, about the contents of reports about me that they have requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I also authorize AXP to use the reports from consumer reporting agencies for marketing and administrative purposes. I am able to read and understand the English language. I understand that upon AXP's approval of the Application, the entity will be provided with the Agreement and materials welcoming it, either to AXP's program for Merchant Services, Inc. to perform services for AXP or in AXP's standard Card acceptance program, which has different servicing terms (e.g., different speeds of pay). I understand that if the entity does not qualify for the Merchant Services, Inc. servicing program, the entity may be enrolled in AXP's standard Card acceptance program, and the entity may terminate the Agreement. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Agreement.

You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq, as may be amended from time to time, or processing and acceptance of transactions in certain jurisdictions pursuant to 31 CFR Part 500 et seq. and other laws enforced by the Office of Foreign Assets Control (OFAC).

Client certifies, under penalties of perjury, that the federal taxpayer identification number and corresponding filing name provided herein are correct.

Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been accepted by Merchant Services, Inc. and Bank.

**Client's Business Principal/Officer**

Signature X _[signed]_        Title: President        Signature X _____        Title: _____
Print Name of Signer: John Fox        Date: 5.7.14        Print Name of Signer: _____        Date: _____

Personal Guarantee: The undersigned guarantees to Merchant Services, Inc. and Bank the performance of this Agreement, the American Express Card Acceptance Agreement, if applicable, and any addendum thereto by Client, and in the event of default, hereby waives Notice of Default and agrees to indemnify the other parties, including payment of all sums due and owing and costs associated with enforcement of the terms thereof. Merchant Services, Inc. and Bank shall not be required to first proceed against Client or enforce any other remedy before proceeding against the undersigned individual. This is a continuing guarantee and shall not be discharged or affected by the death of the undersigned and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of Merchant Services, Inc. and Bank. The term of this guarantee shall be for the duration of the Merchant Processing Application and Agreement and the American Express Card Acceptance Agreement, if applicable, and any addendum thereto and shall guarantee all obligations which may arise or occur in connection with my activities during the term thereof through enforcement shall be sought subsequent to any termination.

**Personal Guarantee**                                                        **Personal Guarantee**

Signature X _[signed]_                                                        Signature X _____
Print Name: John Fox        Date: 5.17.14                                     Print Name: _____        Date: _____

**Accepted By Merchant Services, Inc.**                Wells Fargo Bank, N.A., 1200 Montego Way, Walnut Creek, CA 94598

Signature X _Natalie Castellano_                                              Signature X _____
Title: _____        Date: 5/8/14                                     Title: _____        Date: _____

MerServ1604(ia)        **10. GRID INFORMATION – INTERNAL USE ONLY**        MerServ1604(ia)

| | | | | | | |
|---|---|---|---|---|---|---|
| MC CREDIT MPG ID | 8-position Alpha/Numeric | VISA CREDIT MPG ID | 8-position Alpha/Numeric | DISCOVER NETWORK CREDIT MPG ID | 8-position Alpha/Numeric | AUTHORIZATION GRID ID#: |
| MC DEBIT MPG ID | 8-position Alpha/Numeric | VISA DEBIT MPG ID | 8-position Alpha/Numeric | DISCOVER NETWORK DEBIT MPG ID | 8-position Alpha/Numeric | |
| MC CREDIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | VISA CREDIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | DISCOVER NETWORK CREDIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | USER DEFINED GRID ID#: |
| MC DEBIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | VISA DEBIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | DISCOVER NETWORK DEBIT TIERED GRID ID | 8-position Alpha/Numeric (Client Use) | |

Case: 16-04145   Doc# 1   Filed: 05/12/16   Entered: 05/12/16 16:24:18   Page 13 of 13